IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

KAREN EFIRD, Individually and as
Guardian of the Person and of the
Estate of Blanche Adams,
an incapacitated person                                                                    PLAINTIFF

V.                                                    CASE NO. 07-CV-4031

CURTIS KING and
HALE COUNTY STATE BANK                                                      DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Defendants' Motion to Dismiss.  (Doc. 3).  Plaintiff has responded. (Doc. 5).  Defendants have replied to Plaintiff's response.  (Doc. 8). A hearing was held in this matter on June 25, 2007, in which the Court heard arguments regarding the Motion to Dismiss. The Court finds that this matter is ripe for consideration.

## I.  BACKGROUND

This case revolves around the will of Blanche Adams, an elderly lady who was formerly domiciled in Texas and now resides in Arkansas.  Mrs. Adams and her late husband, Gales Adams, lived their married life in Texas.  Mr. Adams left a sizable estate when he died in 1993, and part of his estate was devised to a testamentary trust with Mrs. Adams as the beneficiary and another part was devised outright to Mrs. Adams.

Hale County State Bank (HCSB), a Texas bank not registered to do business in Arkansas, assisted Mrs. Adams with the administration of Mr. Adams's estate and presently serves as trustee of the testamentary trust of Mr. Adams's will.  HCSB also serves as an agent and asset manager for Mrs. Adams under an agency agreement executed by Mrs. Adams in Texas.  This agreement is subject to termination or revocation by Mrs. Adams at any time.  In 1999, Mrs.

Adams executed a Last Will and Testament that named HCSB as the Independent Executor and directed that her estate be distributed to Karen Efird and others.  Karen Efird is Mrs. Adams's great-niece.

Mrs. Adams moved to Arkansas in 2000.  In 2003, Mrs. Adams executed a codicil to her Last Will and Testament that made three specific $1000 bequests to local cemeteries.  All other aspects of the Last Will and Testament remained in full force and effect.  Plaintiff alleges in her complaint that in January 2004, Mrs. Adams began experiencing confusion and brain atrophy. At this time, Karen Efird began to assist Mrs. Adams in her everyday routine.

Since Mrs. Adams's move to Arkansas, HCSB and its agents, including Curtis King, a trust officer, continued to communicate and deal with Mrs. Adams.  Mr. King has visited Arkansas briefly on two occasions to assist Mrs. Adams with her estate planning.  During one of these visits in 2005, Mr. King assisted Mrs. Adams with a change in her will, resulting in the execution of a codicil to the will.   The codicil repealed the disposition clause of her will that distributed her estate to Karen Efird and others and instead directed that all funds be distributed into an entity titled the A. Gales Adams and Blanche Adams Foundation.  This change in the will, according to Mr. King, was done at Mrs. Adams's request.  Plaintiffs allege that Mr. King induced Mrs. Adams to make this change and that Mrs. Adams was incompetent when the codicil was executed.

In 2005, some of Mrs. Adams's assets were sold and divided into two funds:  (1) the Blanche Adams Trust, which named four grandchildren as beneficiaries and (2) the Blanche Adams Agency that named Mrs. Adams as the beneficiary.

In August 2006, during Mr. King's second visit to Arkansas, he attempted to retrieve a

Certificate of Deposit in excess of $50,000 belonging to Mrs. Adams from Diamond State Bank. However, Mr. King was never able to retrieve the Certificate of Deposit.  On November 1, 2006, Mr. King sent a letter to Mrs. Adams that contained a typed document for her to sign.  This document stated that Mrs. Adams wished for her will to be kept private and that HCSB had not influenced her feelings in any way.  Mrs. Adams did not sign this document.

Karen Efird was appointed guardian of the person and estate of Mrs. Adams in December 2006 when a court found her to be incompetent.  In March 2007, Karen Efird commenced an action in her individual capacity and in her capacity as guardian of Mrs. Adams' person and estate against HCSB and Mr. King.  She originally filed the action in the Circuit Court of Howard County, Arkansas, but Defendants requested that the action be removed to this Court.  In her complaint, Karen Efird alleges fraud, fraudulent inducement, conversion, and breach of fiduciary duty, and she prays for injunctive relief and damages.

Defendants have filed a Motion to Dismiss, asserting that Karen Efird has failed to state a claim upon which relief can be granted, that Karen Efird has not suffered any injury or damages, and that Karen Efird does not have standing to assert any claim.  Defendants also argue that the Court does not have personal jurisdiction over them.[1]

## II.  DISCUSSION

*A.  Personal Jurisdiction*

The Court will first discuss the Defendants' argument that the Court lacks personal jurisdiction over them.  In a diversity action, the Court may assume jurisdiction over non-resident

---

[1]Defendants make this argument even though they asked for this case to be removed to this Court.

-3-

defendants only to the extent permitted by the long-arm statute of Arkansas and by the Due

Process Clause of the Fourteenth Amendment. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070,

1073 (8th Cir. 2004) (citing *Morris v. Barkbuster, Inc.*, 923 F.2d 1277 (8th Cir. 1991)). The

long-arm statute of Arkansas confers jurisdiction to the fullest constitutional extent; thus, the

Court's inquiry is limited to whether the exercise of personal jurisdiction comports with due

process. Ark. Code Ann. § 16-4-101(B) (Repl. 1999)*; Dever*, 380 F.3d at 1073.

"Due process requires minimum contacts between a non-resident defendant and the forum

state such that maintenance of the suit does not offend traditional notions of fair play and

substantial justice." *Dever*, 380 F.3d at 1073. There are two theories for evaluating minimum

contacts: general jurisdiction and specific jurisdiction. *Id*. Under the general jurisdiction theory,

the Court may hear this lawsuit against Defendants if they have "continuous and systematic"

contacts with Arkansas, even if the injuries at issue in this lawsuit did not arise out of

Defendants' activities directed at Arkansas. *See id*. In contrast, specific jurisdiction is viable

here only if the injury giving rise to this lawsuit occurred within or had some connection to

Arkansas. *See id*.

Both theories of personal jurisdiction require some act by which the Defendants

purposely availed themselves of the privilege of conducting activities within Arkansas, thus

invoking the benefits and protections of its laws. *See id.* (citing *Hanson v. Denckla*, 357 U.S.

235 (1958)). If the Court determines that Defendants have minimum contacts with Arkansas, it

may consider "whether the assertion of personal jurisdiction would comport with 'fair play and

substantial justice.'" *See id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).

The Eighth Circuit has instructed courts to consider the following factors when resolving

-4-

a personal jurisdiction inquiry, with significant weight given to the first three factors:  (1) the nature and quality of the defendants' contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.  *Id.* at 1073–74.

Neither Defendants nor Plaintiffs make mention in their briefs of the two different theories of personal jurisdiction.  Thus, the Court will analyze both theories.  Here, we have a Texas bank and its agent who is a resident of Texas.  HCSB is not registered to do business in Arkansas.  The agency agreement between HCSB and Mrs. Adams was executed in Texas, and HCSB claims that the bulk of Mrs. Adams's assets remain in Texas.  However, Mr. King, as a trust officer for HCSB, continued to communicate and deal with Mrs. Adams after she moved to Arkansas, and he visited Arkansas on two occasions to continue to assist Mrs. Adams with her estate planning.

In Defendants' motion to dismiss, they generally assert that there are dominant Texas physical contacts and that HCSB does not transact business in Arkansas.  The Defendants' argument seems to focus on the general jurisdiction theory.  The Court agrees with Defendants that the Court has no power to exercise general personal jurisdiction over HCSB and Mr. King.  Karen Efird has failed to make a prima facie showing that the Defendants had "continuous and systematic" contacts with Arkansas.  *See Dever*, 380 F.3d at 1074.

The Court turns now to the theory of specific jurisdiction, which a court may exercise when a defendant has purposely directed his or her activities at residents of the forum and when the litigation results from alleged injuries that arise out of or relate to those activities.  *Wessels, Arnold & Henderson v. Nat'l Medical Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir. 1995) (citing

*Burger King,* 471 U.S. at 472). Here, specific jurisdiction refers to jurisdiction over causes of action arising from or related to the Defendants' actions in Arkansas. *See Nat'l Medical Waste*, 65 F.3d at 1432 n.4.

Defendants cite *Hanson v. Denckla* in support of their argument that the Court lacks jurisdiction and assert that the present case is closely analogous to *Hanson*. *Hanson*, 357 U.S. 235. In *Hanson*, the Supreme Court ruled that a Delaware Bank, the trustee, did not avail itself of the laws of Florida when the settlor who established the trust moved to Florida and subsequently changed the beneficiaries of the trust. The trust agreement was executed in Delaware by a trust company incorporated in Delaware and a settlor domiciled in Pennsylvania. The first relationship Florida had to the agreement was years later when the settlor became domiciled there, and the trustee remitted the trust income to her in Florida. From Florida, the settlor carried on several bits of trust administration, including the execution of two powers of appointment. *Id.* at 253.

The Supreme Court noted that the issue in *Hanson* was the validity of the trust agreement executed in Delaware and not the validity of the appointments executed in Florida. There was never a suggestion that the appointments were ineffective. Thus, the Supreme Court held that the execution in Florida of the powers of appointment did not give Florida a substantial connection with the contract on which the lawsuit was based. *Id.* at 253–54.

The present case is distinguishable from *Hanson*. In *Hanson*, the cause of action in the case was not one that arose out of an act done or a transaction consummated in the forum state, which was Florida. Here, the cause of action arose out of a codicil that was executed by Mrs. Adams in the forum state, Arkansas. Mr. King traveled to Arkansas for the purpose of executing

this codicil, and all of Karen Efird's claims arise from the execution of this codicil. The alleged wrongful acts of HCSB and Mr. King were committed in Arkansas. Thus, the codicil has a strong connection to Arkansas. Mrs. Adams was domiciled in Arkansas when the codicil was executed. In addition, there were two occasions when Mr. King visited Arkansas in relation to the codicil. There is evidence that Mr. King continued to communicate with Mrs. Adams in person and by letter about the codicil and other estate planning matters since her move to Arkansas. The Court is convinced that it has the power to exercise specific personal jurisdiction over Defendants in this case and that this assertion of personal jurisdiction comports with fair play and substantial justice.

### B.  Failure to State a Claim Upon Which Relief Can be Granted

Turning now to Defendants' other argument for dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), the Court finds that Karen Efird has failed to state a claim upon which relief can be granted. Karen Efird cannot show that she, Mrs. Adams, or Mrs. Adams' estate has been injured or damaged. A will is ambulatory and revocable and does not become effective until the death of the testator. *Hiler v. Cude*, 248 Ark. 1065, 1078, 455 S.W.2d 891 (1970); *Janes v. Rogers*, 224 Ark. 116, 119, 271 S.W.2d 930 (1954). The property passing under the will does not become vested in the devisee until the testator's death. *Monk v. Griffin*, 92 Ark. App. 320, 325, 213 S.W.3d 651 (2005) (citing *Blair v. Bradley*, 238 Ark. 191, 379 S.W.2d 5 (1964)). Here, Mrs. Adams still retains all of her property. Karen Efird does not own any vested interest in this

property.  While alive, Mrs. Adams has the right to fully dispose of all or any portion of her property as she wishes.[2]

Karen Efird has asserted several causes of action against HCSB and Mr. King, including fraud, breach of fiduciary duty, and conversion stemming from the execution of a codicil to Mrs. Adams's will.  However, this change in the will has caused no injury or damage to Karen Efird or Mrs. Adams, which is an essential element that must be proved in each cause of action.

Karen Efird argues that the statute of limitations would run if she had not asserted her causes of action when she discovered the fraud.  However, the statute of limitations does not begin to run until a full cause of action has accrued.  Such accrual will not occur until Mrs. Adams and Karen Efird have suffered damages, which is an essential element of her claims.  *See Chapman v. Alexander*, 307 Ark. 87, 88, 817 S.W.2d 425 (1991) (stating that in ordinary tort actions, the statute of limitations begins to run upon the occurrence of the last element essential to the cause of action).

Karen Efird's suit is premature because neither she nor Mrs. Adams have suffered any damages, given that the will and its codicil do not become effective until Mrs. Adams's death.  If Karen Efird wishes to argue that the codicil to Mrs. Adams's will is not valid, she may do so by contesting the admission of the codicil to probate following Mrs. Adams's death.  Until then, Karen Efird has no cause of action against HCSB and Mr. King.

---

[2]Karen Efird argues that because Mrs. Adams has been determined to be incompetent by a court of law, her will cannot be changed.  Even still, Mrs. Adams's guardian may use and consume the property for the benefit of Mrs. Adams until her death.

<u>III.  CONCLUSION</u>

For reasons discussed herein and above, the Court finds that Defendants' Motion to Dismiss should be and hereby is **GRANTED**.  An order of even date, consistent with this opinion, shall issue.

**IT IS SO ORDERED**, THIS 3rd day of August, 2007.


    /s/ Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge